IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Kesha L. Hayes<br><br>            Plaintiff,<br><br>    v.<br><br>Sandhills Medical Foundation, Inc., Dr. Sharon Browning, Christopher Dixon, David Roberts, and Trey Boone (in their official and individual capacities), and the Board of Directors of Sandhills Medical Foundation, Inc.<br><br>            Defendant. | C/A No.: 3:23-cv-00046-SAL-SVH<br><br><br>COMPLAINT |

## INTRODUCTION

Plaintiff Kesha L. Hayes, by and through her undersigned attorneys, hereby brings the Causes of Action of Section 1981 Race Discrimination/Racially Hostile Work Environment, Section 1981 Retaliation, Breach of Contract, Breach of Contract Accompanied by a Fraudulent Act, and Civil Conspiracy, and Invasion of Privacy against Defendants Trey Boone, Sharon Browning, Christopher Dixon, David Roberts, Sandhills Medical Foundation, Inc., and the Board of Directors of Sandhills Medical Foundation based on the following allegations.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343, and 42 U.S.C. Section 2000e (5), this being a proceeding to enforce rights and remedies secured under 42 U.S.C. Section 1981 and other Federal statutes. This Court also has pendant and supplementary jurisdiction over so much of this action as is based on state law.

2. Venue is proper in the Columbia Division, because the causes of action arose therein, the acts and practices complained of occurred there, and it is where Defendant does business and may be found.

PARTIES

3. Plaintiff Kesha L. Hayes is an African American woman and a citizen of the State of South Carolina. Plaintiff resides in Kershaw County, South Carolina within this judicial district.

4. Each of the individual Defendants are citizens of the State of South Carolina and resides within this judicial district.

5. Defendant Sandhills Medical Foundation, Inc. ("Defendant" or "Sandhills") is a nonprofit corporation having agents, employees, offices, or properties in Kershaw County, South Carolina. At all times relevant to this Complaint, Defendant was acting by and through its agents, servants, employees and/or officers. Defendant is incorporated under the laws of the State of South Carolina, with its principal place of business in Camden, South Carolina.

STATEMENT OF FACTS

6. On or around June 2017, Plaintiff began working at Defendant SMF on a part-time basis in the Outreach Department after applying, interviewing, and accepting the position offered by the Chief Executive Officer, Defendant Christopher Dixon (Caucasian Male).

7. Plaintiff is a member of a protected class as an African-American female.

8. Defendant Sandhills Medical Foundation (hereinafter referred to as "SMF") is a non-profit organization that provide medical resources, services, and comprehensive healthcare to underserved communities in rural areas of South Carolina.

9. Upon information and belief, Plaintiff was hired on account of her excellent work ethic and ongoing connection with the community Defendant SMF serves. At all times, Plaintiff performed her job to the best of her ability.

10. Upon information and belief, at the time of Plaintiff's hiring, she was under the direction and supervision of the Community Development Director, Defendant David Roberts (Caucasian Male). Plaintiff's hiring was questioned by several members of Defendant's Board solely because Plaintiff was an African-American hired into the Outreach Department.

11. Upon information and belief, almost immediately after her hiring, Plaintiff began facing racially discriminatory opposition from Defendant Roberts who also did not agree with her hiring.

12. Plaintiff asserts that Defendant Roberts' racially discriminatory and racially hostile behavior against Plaintiff included questioning Plaintiff's skills and decision-making, rejecting Plaintiff's ideas, and resisting cooperating with Plaintiff on assignments. Plaintiff asserts, and observed, that Defendant Roberts did not treat the Caucasian employees of Defendant SMF with the same apprehension and hostility as he did with Plaintiff. Defendant Roberts continued, in various forms, to racially impede Plaintiff's career with Defendant SMF by intervening and obstructing Plaintiff's work between 2017 up through the time of her termination solely based on racial purposes. Defendant Roberts' acts of racial discrimination occurred even after Plaintiff leaves his supervision and occurred daily/monthly through 2018, 2019, 2020, 2021, and to July 2022.

13. Plaintiff notified Defendant Christopher Dixon (Caucasian Male), SMF's Chief Executive Officer, of Defendant Roberts' behavior, in which Defendant Dixon told Plaintiff to give things with Defendant Roberts more time. Plaintiff found this to be disconcerting and raised questions in Plaintiff's mind about the level of support that Dixon truly should have provided her. Defendant Dixon failed to investigate Plaintiff's complaints or resolve

Plaintiff's subjection to racially discriminatory acts which revealed to Plaintiff that although Dixon hired her, she realized early on that Dixon was not objective in addressing her concerns as an African-American employee against his fellow Caucasian Officer, Roberts (WM).

14. On or around August 2017, Defendant Dixon asked Plaintiff to help create the Human Resources Department after he discovered that Plaintiff has a Master's of Arts in Human Resources and in recognition of Plaintiff's work ethic, intelligence, and organizational skills.

15. As a result, Plaintiff became the Human Resources Director, leaving her Outreach position until late 2021. For several months, until her termination, Plaintiff maintained a dual role as Chief Talent Officer (Outreach) and Human Resources Director; both jobs were Executive positions under the direction of Defendant Dixon.

16. Upon the announcement of her permanent role as Human Resources Director, several members of the Board of Directors and Roberts questioned her hiring solely on the basis of her race. In fact, several Caucasian members of the Board spoke out verbally that the agency had hired a Black Human Resources Director.

17. Plaintiff maintained her work ethic and ability to balance both job titles to the best of her ability, receiving positive remarks and interactions with the employees of Defendant SMF.

18. Upon information and belief, upon taking the Human Resources Director position, Plaintiff noticed a pattern where agents of SMF, including Defendant Roberts and Defendant Dixon, treated the African-American Directors differently from the Caucasian Directors in terms of managerial respect and disciplinary matters.

19. Specifically, Plaintiff asserts, upon information and belief, that on or around May 2021 Defendant Dixon promoted Defendant Roberts to Chief Operating Officer despite a more-qualified African-American internal applicant's interest in the position. When Plaintiff, as HR Director who is an African-American female, questioned Defendant Dixon about the vast discrepancy of qualifications and expressed her thoughts on the matter regarding fair promotional practices based upon race, Plaintiff asserts that Dixon decided to make the COO role a dual role as a pretext to discriminate against the African-American female internal applicant. When Plaintiff questioned this, she was met with opposition from Defendants Roberts, Dixon, and members of the Board.

20. In opposition to the open discrimination, which the internal applicant received, the applicant, who was the permanent African-American employee offered the pretextual dual role, resigned shortly thereafter, on or around June 2021, due to the racially hostile environment at Defendant SMF.

21. Plaintiff further asserts, upon information and belief, that Defendant Dixon asked Plaintiff to assist in the termination of another African-American female executive, the Chief Medical Officer, on or around August 2021. Despite receiving a properly submitted resignation from that African-American Medical Officer, *and against Plaintiff's advice*, Defendant Dixon orchestrated efforts to rush that African-American Officer to leave sooner than agreed to, shortly thereafter hired Defendant Sharon Browning (Caucasian Female) in the position before the resignation of the previous African-American Officer, and subsequently fired the African-American Chief Medical Officer before the terms of her resignation. This hiring of Roberts and Browning shows a pattern and practice of excluding African-Americans from the managerial ranks based upon race.

22. Plaintiff asserts that Defendant Browning also became Plaintiff's primary care physician after her hiring due to the Defendant's policy as a medical facility of allowing employees to receive medical care at their jobs.

23. Plaintiff asserts that Defendants Browning, Dixon, and Roberts immediately began a practice questioning her abilities in Human Resources and began a practice of disagreeing, questioning, and undermining Plaintiff and decision-making behind her back stemming from the latter months of 2021 and escalating through 2022 until her termination.

24. After Defendant Browning's hiring, she began a concerted effort with Defendant Roberts to mount an aggressive attack on Plaintiff's character and work competence. Specifically, within the internal structure, both Defendants Browning and Roberts daily plotted Plaintiff's demise.

25. Upon information and belief, Plaintiff was subjected to race discrimination by Defendant Browning and Defendant Roberts where Plaintiff faced racially discriminatory acts to include racial harassment, intimidation, and manipulation on a daily basis for several months prior to her termination.

26. Plaintiff asserts that she made multiple complaints, specifically during 2020, 2021, and 2022, about the racial mistreatment she faced from Defendants Browning and Roberts to Defendant Dixon to no avail. In fact, Dixon solicited the help of Browning and Roberts in undermining Plaintiff's standing among agency employees.

27. In addition, Plaintiff asserts that Defendant Dixon, instead of investigating or resolving the complaints, made a practice of informing other Department Heads, specifically Defendants Roberts and Browning, of Plaintiff's complaints and concerns and instructing them to email

Plaintiff about her concerns or work-related matters. Plaintiff asserts that this practice began in late 2021 but intensified in the beginning of 2022.

28. Dixon encouraged the overriding of Plaintiff's duties and handling of personnel matters outside of the Human Resources Department. Defendant SMF's Caucasian directors or similarly-situated Caucasian coworkers were treated with more respect and favorable actions than Plaintiff.

29. Upon information and belief, Defendants Roberts and Browning began a practice of encouraging their department's employees to contact them for Human Resources questions or personnel matters instead of following the proper route to Plaintiff. Plaintiff asserts that this action intended to cause, and resulted in, distrust, lack of faith, and confusion of Plaintiff's role and responsibilities with other employees of Defendant SMF.

30. Upon information and belief, Defendants Roberts and Browning began a practice of gathering personnel complaints and needs from their department's employees, informing their employees that they would inform Plaintiff (the Human Resources Department Director) of any concerns, but failed to do so.

31. Further, Plaintiff asserts that Defendants Roberts and Browning would purposely not inform Plaintiff of any personnel matters, allow the employee to become disgruntled when their issues were not addressed, and place blame on Plaintiff, who was never informed. Defendant SMF's Caucasian directors and other similarly-situated Caucasian coworkers were not subjected to the same level of hostility and undermining which Plaintiff experienced.

32. Upon information and belief, Defendants Dixon, Roberts, and Browning began a practice of carbon-copying and blind carbon-copying email communications with Plaintiff amongst

themselves in which these Defendants would misconstrue, restate erroneously, and/or confuse oral conversations they had with Plaintiff to Plaintiff and/or others in the email to create a record.

33. Upon information and belief, Defendants Dixon, Roberts, and Browning began a practice of informing Defendant SMF Board members of Plaintiff's communications, complaints against Plaintiff orchestrated by those defendants, and unsubstantiated opinions of Plaintiff's inability to do her job, which were not only false but were also manufactured for the purpose of causing board members to oppose Plaintiff due solely to Plaintiff's race.

34. Plaintiff asserts that none of the other Caucasian Department Directors were treated in the same manner as Plaintiff, and were able to conduct their responsibilities without hostility, oversight, and questioning. Despite the racial hostility, discrimination, and harassment, Plaintiff continued to work diligently, fairly, and properly to the best of her ability.

35. Upon information and belief, as Human Resources Director and Defendant's sole human resources personnel for three years, Plaintiff was tasked with accepting, investigating, and resolving personnel complaints from employees. All indications and reviews were previously positive on Plaintiff.

36. On or around October 2021, several months prior to Plaintiff's termination, an employee of Defendant SMF called Plaintiff with a complaint against Defendant Browning, stating that Defendant Browning did not like brown people.

37. Plaintiff filed a report of the alleged complaint and started an internal investigation of the complaint against Defendant Browning. Based on her previous experiences with Browning, in an effort to remain objective, Defendant Dixon and Defendant SMF's counsel suggested Jimmy Ellis (African-American Male) to assist with the investigation. They each

were tasked with going to different SMF locations to speak with employees. Defendant's counsel encouraged Plaintiff to notify Defendant Browning of the investigation; however, Defendant Dixon instruction told Plaintiff not to notify Defendant, despite Plaintiff protesting and notifying Defendant Dixon of the proper HR means to handle the situation.

38. Upon information and belief, the investigation revealed several complaints about Defendant Browning and Defendant Dixon, and not Plaintiff. At the close of the investigation, Plaintiff provided a report with recommendations to Defendant Dixon and Defendant SMF's legal counsel.

39. Following the report and recommendation of Plaintiff, Plaintiff was informed to her shock, that another investigation had been orchestrated by Dixon into Plaintiff's work in the agency, Plaintiff immediately concluded this was retaliation for Plaintiff's investigative actions on Defendant Browning and Defendant Dixon.

40. In an effort to cloak a pretextual reason to get rid of Plaintiff, the Defendants hired an outside company, E-Source, to investigate using Defendant Trey Boone (Caucasian Male) to conduct interviews and an anonymous survey. Plaintiff realized, at this point, that she was the target of a conspired effort by Defendants Dixon, Browning, Roberts, and Boone to cause her termination.

41. In an effort to do her job, Plaintiff provided Defendant Boone with the names of employees to interview from various locations who had expressed concerns regarding Dixon, Browning, and Roberts' leadership abilities and hostile interactions with staff to Defendant Boone. Defendant Boone then conducted some third-party investigations, but only spoke to some of Plaintiff's referenced employees (African-American).

42. Plaintiff received calls from agency employees stating that Defendants Roberts and Browning made discrete trips to Defendant SMF's locations ahead of Defendant Boone, intimidating and encouraging employees with narratives for the third-party investigation to attack Plaintiff.

43. Upon information and belief, Defendant SMF launched an anonymous survey that would be distributed to employees. As a result of Defendant Boone's investigation, the results of the survey sparked a Listening Project. Defendant Dixon assigned Defendant Roberts and Mr. Ellis to the Project, excluding the Human Resources Department and Plaintiff for the sole purpose of getting rid of Plaintiff through an orchestrated conspiracy amongst themselves to cloak their own poor leadership skills.

44. Before the Listening Project, on or around March 2022, Plaintiff began receiving requests and contact from members of Defendant SMF's Board, in which she was informed that there were complaints about the Human Resources Department. Plaintiff was asked to attend a board meeting to address these concerns.

45. Plaintiff attended an Executive Session called by the Board where she was asked about Defendant Dixon and his handling of several incidents related to African-American directors who were no longer employed with Defendant SMF. The Board questioned Plaintiff as to why the African-American executives had left.  Plaintiff told the truth only to be ostracized by Caucasian members of the Board.

46. Plaintiff contends Defendant Dixon also made a practice of utilizing Plaintiff's role to create turmoil amongst the other directors, to include Plaintiff. Specifically, when Plaintiff confided in Defendant Dixon in early March 2022 about Defendant Browning's medical

practice inconsistencies regarding employees as a matter of concern, to include herself, Dixon, again, took no immediate action.

47. With respect to this medical practice inconsistency notification to Dixon by Plaintiff, Defendant Dixon informed Plaintiff that he would handle it on his own time. Plaintiff would discover that Dixon would use this information several months later, in June 2022.

48. On or around April 27, 2022, also before the launch of the Listening Project but after Plaintiff's meeting with the Board, Defendant Dixon called an impromptu meeting to address, what he deemed to be, conflict between Defendant Browning and Plaintiff.

49. Upon information and belief, Plaintiff only expressed concerns about her treatment from Defendant Browning with Defendant Dixon as protected complaints. In addition to Plaintiff and Defendant Browning, to Plaintiff's shock and dismay, Defendant Dixon invited Defendant Boone, Defendant Roberts, and Jimmy Ellis to the meeting for the sole purpose of setting up the Plaintiff.

50. Plaintiff asserts that, during this meeting, Defendant Browning made statements regarding Plaintiff and Plaintiff's son's health and treatment that she was privy to only as Defendant Browning's patient.

51. Around the time of the April 27, 2022 meeting, Defendant Dixon notified all staff that the Human Resources department was not involved in the Listening Project, which signaled an attack by Dixon and others upon Plaintiff's integrity. Mr. Ellis and Defendant Roberts conducted the Listening Project interviews with employees as well as Defendant Boone. In short, the very people who were committing the poor management practices towards employees were conducting their own investigation.

52. In or around May 2022, Defendant Dixon contacted Plaintiff and suggested that she leave her position as Director of Human Resources following a Board Meeting. Defendant Dixon did not provide Plaintiff with a reason. At that time, Plaintiff had resumed her dual role in the HR and Outreach Departments.

53. On or around early June 2022, Plaintiff learned that Defendant Browning had been in contact with Defendant SMF Board members and alleged false claims of harassment to Defendant SMF Board against Plaintiff. Defendant Browning, in her contact with certain Board Members, cited collusion between Defendant Dixon and herself to the Board. Plaintiff asserts nothing could be further from the truth as she regarded both Dixon and Browning as hostile entities against her best interests. These meetings between Defendant Browning and the Board occurred before Defendant Browning's termination.

54. In an effort to protect himself for condoning the hostile work environment created by Defendant Dixon and Browning, Dixon, as promised, later uses a medical inconsistency involving Plaintiff receiving conflicting covid-19 test results evaluated by Defendant Browning, as Chief Medical Officer, to eventually terminate Browning's employment in June 2022 as the facts led him reluctantly to no other conclusion but to terminate Browning.

55. Defendant SMF Board learned of Defendant Browning's termination on or around the June 22, 2022 at a Board meeting. Certain Caucasian members of the Board were furious and concluded that Plaintiff and Dixon had caused Browning's termination.

56. Defendant Dixon, in fear that he was about to lose his job due to the Board's reaction to Browning's termination, Dixon tried to make Plaintiff the fall person and contacted Plaintiff and suggested that Plaintiff leave the Human Resources Director position to

appease the Board's anger over Browning's termination. Plaintiff objected which Dixon was not pleased.

57. On or around July 14, 2022, Defendant Dixon verbally informed Plaintiff that he was terminated by Defendant SMF Board via a text message from Defendant Roberts.

58. On or around July 15, 2022, Plaintiff was suspended and eventually terminated from her position.

59. Plaintiff believes her termination was a concerted effort by named Defendants Browning, Roberts, Boone, and certain Caucasian members of Defendant's Board due to her advocacy opposing the racially hostile work environment she tried to correct as HR Director and her highlighting the medical unethical practices of Browning to the Board, which caused immediate retaliation against Plaintiff.

60. Upon information and belief, following Plaintiff's termination, Defendant SMF placed Defendant Roberts as Interim Chief Executive Officer.

61. Upon information and belief, following Plaintiff's termination, Defendant SMF placed Defendant Boone in the Human Resources position as a contract employee.

62. Upon information and belief, following Plaintiff's termination, Defendant SMF placed Defendant Browning back in her position as Chief Medical Officer.

63. Plaintiff, therefore, contends that she has suffered extreme humiliation, mental anguish, embarrassment, loss of income all due to her following agency policy, asserting as HR Director, her responsibilities to address the racially hostile environment to Defendant Dixon, who did nothing and singling out Defendants Roberts, Browning, Boone, the Caucasian members of the Board who opposed her advocating against race discrimination.

## FIRST CAUSE OF ACTION

*Race Discrimination / Racially-Hostile Work Environment in Violation of 42 U.S.C. § 1981*

64. Plaintiff reiterates each and every allegation contained in the previous paragraphs as if set forth verbatim herein.

65. Plaintiff is a member of a protected class on the basis of her race (African American). Plaintiff was subjected to disparate treatment on the basis of her race due to Defendants and Defendants' agents racially disparate treatment towards her in violation of 42 USC § 1981.

66. Plaintiff alleges that this disparate treatment on the basis of her race while on the job was pretextual, as Defendants made promises to Plaintiff that Plaintiff would be protected from disparate treatment on the basis of her race. Plaintiff alleges that Defendants, through their agents, initiated discriminatory and hostile practices against Plaintiff which were reckless, wanton, and intentional race discrimination based on her race to include:

67. Defendants, by their agents, allowed Plaintiff to be discriminated against on the basis of her race to the exclusion of her similarly-situated Caucasian colleagues, who were not subject to the same scrutiny and undermining behavior as Plaintiff.

68. Defendants allowed CMO Sharon Browning and Christopher Dixon to discriminate against Plaintiff on the basis of her race by undermining Plaintiff's authority to the exclusion of her similarly situated Caucasian colleagues. Browning's actions were deliberate race-based discrimination orchestrated to ultimately terminate Plaintiff.

69. In failing to protect Plaintiff from racial discrimination, Defendants and their agents acted with malice and reckless indifference to the federally protected rights set out under 42 USC § 1981, the South Carolina Human Affairs Law, and the United States Equal Employment Opportunity Laws.

70. Plaintiff alleges the Defendants, through their agents, initiated discriminatory practices against Plaintiff based on her race.

71. As a result of Defendants' race discrimination, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages should be levied against Defendants due to their unlawful treatment of Plaintiff.

<u>SECOND CAUSE OF ACTION</u>
*Retaliation In Violation Of 42 U.S.C. § 1981*

72. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

73. Plaintiff is a member of a protected class on the basis of her race (African American). Plaintiff was subjected to retaliation on the basis of her race due to Defendants and Defendants' agents racially disparate treatment and retaliation towards her in violation of 42 U.S.C. § 1981.

74. Plaintiff was repeatedly subjected to and protested the violations of her federally protected rights within the Defendants' administrative structure all to no avail as such complaints merely subjected Plaintiff to being mistreated in a retaliatory manner and to a continuance of unlawful racial harassment and retaliation as stated above.

75. Plaintiff repeatedly objected to and protested the violations of her federally protected rights within the Defendants' administrative structure.

76. After Plaintiff sought to seek relief from Defendant's discriminatory practices, to include but not limited to consulting with upper management, Defendant Dixon, Defendants and Defendants' agents to include Defendant Browning, Defendant Roberts, and Defendant

Dixon retaliated against her by a continuance of harassment, increased racially discriminatory mistreatment, and by not addressing her protected complaints.

77. After the Plaintiff informed Defendants of the racial discrimination and mistreatment that Plaintiff was exposed to (protected complaints), Defendants retaliated against Plaintiff by practicing a continuing pattern of animus, pretextual performance evaluations, and the pretextual termination of Plaintiff to include:

78. Prohibiting employees to utilize the Human Resources Department, ran by Plaintiff, by accepting the employee's complaint and/or needs but failing to inform Plaintiff, for the purpose of harming Plaintiff and the relationship Plaintiff built with the staff.

79. Providing false narratives about Plaintiff to employees to create hostility and distrust in Plaintiff and Plaintiff's department.

80. Pinning the Board of Directors against Plaintiff, leading to Plaintiff's unlawful termination.

81. Creating questions of Plaintiff's performance and competency amongst the staff and Board of Directors of Defendant SMF for the purpose of harassment, undermining, and garner support against Plaintiff.

82. Subjecting Plaintiff to public questioning of her skills, experience, performance, value, competency, and ability to work well with others.

83. Terminating Plaintiff because of her race, in retaliation for Plaintiff working in the parameters of expectations for a Human Resources Department, and as a result of the racially hostile and discriminatory acts of Defendant SMF and its agents.

84. Launching two pretextual investigations into personnel matters, and pretextually into Plaintiff's employment, without involving Plaintiff or the Human Resources department in retaliation of Plaintiff's abiding by her responsibilities and expectations as a Human

Resources Director in accordance with Defendant SMF's policies as well as local, state, and federal laws.

85. Due to the retaliatory acts of the Defendants, their agents and employees, Plaintiff is entitled to injunctive relief and/or civil damages, back wages, plus interest, payment for lost wages, and punitive damages.

86. Accordingly, Plaintiff is entitled to compensatory and punitive damages as a result thereof as Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages should be levied against Defendants on account of its unlawful treatment of Plaintiff.

THIRD CAUSE OF ACTION
*Breach of Contract*

87. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

88. Plaintiff and Defendant entered into a binding and valid contract whereby Defendant offered Plaintiff employment. Plaintiff accepted the offer of employment and agreed to fulfill the duties of her position in exchange for valuable consideration, her salary, as well as Defendant's guarantees that she would be protected from discrimination and other illegal acts.

89. Defendant maintains an employment handbook and its own policies and procedures, specifically policies prohibiting race discrimination and retaliation, as well as policies concerning investigations by Defendant.

90. At all times during the course of her employment, Plaintiff relied on the promises contained in Defendant's handbook, policies and procedures, and governing documents.

91. Defendant breached its employment contract with Plaintiff and its own policies and procedures by failing to protect Plaintiff from the actions of her Caucasian supervisors, to include retaliation on the basis of Plaintiff's protected complaints.

FOURTH CAUSE OF ACTION

*Breach of Contract with Fraudulent Intent*

92. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

93. Defendant, by and through its agents, has failed to fulfill its obligation under its own written policies, including the above-referenced anti-discrimination, anti-harassment, and other policies of Defendant, which together with their promissory and mandatory terms, form a contract with Plaintiff beyond the at-will employment relationship.

94. Defendant, by and through its agents, has breached the terms thereof by reason of an intentional design on its part to defraud Plaintiff.

95. In furtherance of such intentional design, Defendant, through its agents, intentionally and maliciously placed Plaintiff in a position of being subjected to extreme racial harassment and disparate treatment and conducted a pretextual investigation of Plaintiff in violation of Defendant's policies, under the guise of complying with said policies and protecting Plaintiff from discrimination and harassment.

96. Defendant ensured Plaintiff that she would not be subjected to the racially disparate treatment, harassment, and other policy violations which Defendant continuously meted out to Plaintiff, and that her protected complaints under Defendant's policies would be fully and fairly investigated.

97. It became readily apparent to Plaintiff that Defendant's false reassurances were fraudulent as Defendants' continual violations of their own policies demonstrated.

98. Defendant's' conduct, by and through its agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

99. As a result of Defendant's race discrimination and exposure of Plaintiff to Defendant's fraudulent breaches of contract, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages should be levied against Defendant on account of their unlawful treatment of Plaintiff and fraudulent contractual breaches.

<u>FIFTH CAUSE OF ACTION</u>
*Civil Conspiracy as to Defendants Dixon, Boone, Browning, Roberts, and SMF Board of Directors in their Individual Capacities*

100. Each and every assertion set forth herein above is repeated as fully incorporated.

101. Defendant Dixon exceeded the scope of his employment by abusing his supervisory capacity to cause injury to the plaintiff.

102. Defendant Dixon enlisted the assistance of Defendant Browning and Defendant Roberts, also abusing their supervisory capacities, to establish a pattern of racially hostile harassment, retaliation, and treatment that led to the pretextual justification to terminate the plaintiff's employment and supporting the conspiracy by:

    a. Eliciting reports of Plaintiff not completing her job when, in fact, Defendants failed to report information to Plaintiff, lied to their employees with HR needs about making reports to Plaintiff of HR needs, and told the subordinates that Plaintiff did not do her job.

    b. Contacting Defendants Board of Directors to create and support narratives against Plaintiff to influence the Board to pretextually terminate Plaintiff.

c. Discussing Plaintiff's complaints and concerns about the racially hostile and discriminatory treatment in which Defendant Dixon would inform Defendants Browning and Roberts of Plaintiff's complaints for Browning and Roberts to email Plaintiff to address her protected complaints and/or purposely misstate communications they had with Plaintiff.

d. Manufacturing narratives about Plaintiff's competency, ability, and work ethic among Defendant SMF staff for the sole purpose of sewing opposition and distrust of Plaintiff to lead to Plaintiff's termination.

e. Positioning employees against Plaintiff by failing to notify Plaintiff of Human Resources needs only to then blame Plaintiff for not completing these needs as a means to gather support for any complaints against Plaintiff, tarnish Plaintiff's reputation, and to set up Plaintiff's pretextual termination.

f. Launching an investigation as a retaliatory measure in response to Plaintiff's proper investigation of complaints she received in her official capacity.

g. Influencing the answers and opinions by discretely visiting Defendant SMF sites and speaking to staff ahead of the pretextual independent investigation and listening project as an attempt to support animosity against Plaintiff and lead to Plaintiff's pretextual termination.

103. Defendant Dixon enlisted the assistance of Defendant Boone, Defendant Browning, and Defendant Roberts to carry out a pretextual secondary investigation and subsequent listening project as a means to undermine Plaintiff, cast doubt on Plaintiff's internal investigation, and launch a scheme to garner opposition of Plaintiff.

104. Defendant Dixon enlisted the assistance of Defendant Boone, Defendant Browning, and Defendant Roberts to intimidate and further the hostility against Plaintiff by inviting Plaintiff to a meeting with the sole purpose of attacking Plaintiff's character under the guise of inquiring of alleged conflicts between Plaintiff and Defendant Browning.

105. Defendant Browning enlisted the assistance of Defendant SMF Board of Directors by unlawfully communicating with certain Board members about Plaintiff, to include meeting to discuss Defendant Browning false accusations against Plaintiff.

106. Defendant Browning enlisted the assistance of Defendant SMF Board of Directors to pretextually terminate Plaintiff.

107. The Plaintiff has been targeted by deliberate design of Defendant and Defendant's agents in a conspiracy to ensure the termination of her employment and deprivation of her contractual rights to due process with willful disregard to her contractual rights.

108. The natural consequence of Defendant Dixon, Defendant Browning, and Defendant Roberts' combined actions caused special damages to the plaintiff apart from any other damages pleaded herein. Specifically, the acts in furtherance of this conspiracy as alleged have and will continue to cause plaintiff special damages for pecuniary losses, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and further non-pecuniary losses.

109. Accordingly, due to the acts of the defendant and its agents, plaintiff is entitled to injunctive relief and civil damages from Defendants.

110. Furthermore, Plaintiff is entitled to injunctive relief and/or civil damages, renumeration for lost wages and benefits, reinstatement of benefits, and front pay.

111. The acts of the Defendant were designed to cause injury to the employment relationship that existed between Plaintiff and Defendant for the purpose of terminating Plaintiff's employment and causing harm to Plaintiff's reputation in the community.

SIXTH CAUSE OF ACTION
*Invasion of Privacy / Personnel Policy Violation as to Defendant Dixon, Defendant Boone, Defendant Browning*

112. Each and every assertion set forth herein above is repeated as fully incorporated.

113. Plaintiff had a reasonable expectation of privacy in her medical records unless she waived the protections in writing.

114. That Defendant Browning's action was a blatant and shocking disregard to Plaintiff's rights.

115. Defendant Browning exceeded the scope of her employment and doctor-patient relationship with Plaintiff by abusing her supervisory capacity to cause injury to Plaintiff when disclosing information about Plaintiff and Plaintiff's minor child in a staff meeting. This injury was both foreseeable and preventable had Defendants adequately supervised Defendant Browning.

116. Plaintiff had a reasonable expectation of privacy in her employment that personnel matters would not be disclosed to persons not employed by Defendant SMF.

117. Defendants Dixon, Browning, and Roberts violated Plaintiff's expectation of privacy by inviting and including a non-employee, Defendant Boone, to a staff meeting to discuss private, protected matters related to Plaintiff's employment.

118. That Defendants wrongful intrusion and publishing of Plaintiff's private affairs was made to outrage Plaintiff and cause Plaintiff mental suffering, shame, humiliation, and offense to Plaintiff's sensibilities.

119. That the disclosure was highly offensive and likely to cause serious mental injury to a person of ordinary sensibilities.

120. Upon information and belief, Plaintiff is entitled to actual, compensatory, special, and punitive damages as a result thereof as Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damage for such other relief as may be allowed by law.

<u>PRAYER FOR RELIEF</u>

121. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

122. Plaintiff hereby demands a trial by jury.

123. WHEREFORE, Plaintiff prays that this Honorable Court declares that Defendants' actions complained of herein violated the rights guaranteed to Plaintiff and issue its judgment:

a. Declaring the actions complained of herein illegal;

b. Issuing an injunction enjoining the Defendants, their agents, employees,successors, attorneys and those acting in concert or participation with the Defendants, and at their direction from engaging in the unlawful practices set forthherein or any other practices shown to violate South Carolina Law;

c. Awarding Plaintiff actual and compensatory damages against Defendants for the Causes of Action as contained herein, which the jury should find appropriate as a result of the Defendants' unlawful actions, including mental anguish, physical and emotional pain and suffering, harm to Plaintiff's' economic opportunities, medical costs and expenses. as well as back pay, front pay, travel hardships and expenses, and lost future earnings with cost-of-living adjustments, prejudgment interest, fringe

benefits and retirement benefits;

d.  Awarding Plaintiff her costs and expenses in this action, including reasonable attorney

fees, and other litigation expenses; and

e.  Granting such other and further relief as may be just and necessary to afford complete

relief to the Plaintiff as this Court may deem just and proper.

[SIGNATURE BLOCK ON THE FOLLOWING PAGE]


Respectfully Submitted,


__s/Donald Gist_____

Donald Gist (13098)
Erica McCrea (103962)
**GIST LAW FIRM, P.A.**
 4400 North Main Street
 (29203) Post Office Box
 30007 Columbia, South
 Carolina 29230Tel. (803)
 771-8007
 Fax (803) 771-0063
 Email: dtommygist@yahoo.com
        ericamccrea.gistlawfirm@gmail.com

***Attorneys for Plaintiff***

January 3, 2023